## CHARLES C. PARMELE V. STATE OF NEBRASKA.

### FILED DECEMBER 29, 1924. No. 23945.

Evidence examined, and *held* insufficient to support the judgment.

ERROR to the district court for Cass county: ALEXAN-DER C. TROUP, JUDGE. *Reversed and dismissed.*

*W. A. Robertson, H. E. Kuppinger* and *Sullivan, Wright & Thummel,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

*A. L. Tidd, D. W. Livingston* and *Paul Jessen, amici curiæ.*

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

THOMPSON, J.

This is a prosecution by indictment brought in the district court for Cass county against Charles C. Parmele, plaintiff in error hereinafter referred to as defendant. The indictment, in substance, charges that on or about the 8th day of December, 1920, Luke L. Wiles made and delivered his promissory note for $1,500 to defendant or his order by virtue of the relation of principal and agent then existing between Wiles and defendant; that defendant was to negotiate the note and pay the proceeds to one Daisy Douglas for the benefit of Wiles, Daisy Douglas then owning a note for $5,000 signed and delivered to her by Wiles; that defendant unlawfully, fraudulently and feloniously converted and embezzled the note without the assent of Wiles.

Defendant filed a plea in abatement, to which the state answered. Plea was overruled. Defendant then pleaded not guilty; trial was had, and verdict of guilty returned. Motion for a new trial overruled, judgment entered sentencing defendant to the penitentiary for from one to three years. Defendant prosecutes error to this court.

Defendant's brief contains 23 assignments of alleged error, but we find it necessary to consider only one, namely: "The verdict is not sustained by sufficient evidence." The evidence discloses that Mrs. Douglas held a promissory note of Wiles for $5,000. After she received this note she became possessed of $3,500 in cash that she desired to place at interest. Seeing defendant Parmele, she so informed him, and asked if he could not procure such a note for her. Either at the time, or shortly after, defendant told her he could procure a note signed by a Mr. Latham for $5,000, and if Wiles would pay her $1,500 on the note she held of his, that would enable her to purchase the Latham note. In pursuance of this conversation Mrs. Douglas gave defendant a check for something over $3,500, which he used to procure a certificate of deposit for $3,500. Defendant then informed Wiles of Mrs. Douglas' desire to buy the Latham note. Wiles replied that he could not pay $1,500 in cash at the time, but would give a note for $1,500 which could be used as cash. Wiles then executed and delivered the note for $1,500 to defendant. It appears that the Latham note to be purchased was held by an Omaha bank as collateral to an $8,000 note signed by Latham. Defendant went to this Omaha bank, taking Latham with him, and turned over to it the $1,500 note and the $3,500 certificate of deposit. Latham executed a note for $3,000. His $8,000 note was then surrendered to him, and the $5,000 note and mortgage securing it were placed with defendant, who delivered the latter note and mortgage to Mrs. Douglas, requesting her to indorse $1,500 on the $5,000 note of Wiles held by her, as credit for the $1,500 note. She stated that this $5,000 note was in her safety deposit box at the bank, but the first time she went to the bank she would make the indorsement.

It was afterwards found that Mrs. Douglas had not made the indorsement for $1,500 on the Wiles note. Wiles took the matter up with defendant, who again saw Mrs. Douglas. She said she had not made the indorsement, but would do so. It appears that such indorsement was not had at

the time of filing the indictment in the case. It was contended at the trial on the part of the state, by way of the testimony of Wiles, that at the time he delivered the $1,500 note to defendant the latter agreed to see that the indorsement was had, and the case was tried on the theory that, as defendant had received the $1,500 note by reason of the agreement on his part to see that this indorsement was had, which indorsement was not had prior to defendant's use of the note, he then and there became guilty of embezzling such note, which was property of value, as charged in the indictment.

It is obvious that such indorsement would not ordinarily be made by Mrs. Douglas until the $5,000 Latham note and mortgage had been delivered to her, and delivery could not ordinarily be made until the purchase had been had. And purchase could not be had without using the $1,500 note. This was known and so understood by Wiles and defendant at the time. Hence, it is considered by us that the evidence fails to support the state's contention. Failure to secure the indorsement under the facts disclosed by the evidence did not constitute an embezzlement of the note.

It is elementary that a conviction for embezzlement cannot be had unless the evidence discloses a felonious intent. *State v. Culver*, 5 Neb. (Unof.) 238; *Hamilton v. State*, 46 Neb. 284. We cannot perceive from what angle the evidence could be viewed to warrant the conclusion that defendant "unlawfully, fraudulently and feloniously" converted the note as charged. At the time Wiles executed this note it was understood between him and defendant what the latter was to do with it. Defendant used the note pursuant to this understanding and in no other way. Defendant got none of the proceeds of the note. They were applied as defendant promised they would be when he asked Wiles to execute same.

The evidence does not support the contention of the state that defendant was Wiles' agent, but even if it did, as above stated, evidence of a felonious intent is entirely lacking.

834 NEBRASKA REPORTS. [VOL. 112

Therefore, it is considered by us that the judgment of the district court should be, and hereby is, reversed, and the action dismissed.

REVERSED AND DISMISSED.

Note—See Embezzlement, 20 C. J. sec. 82.