## THOMAS MELHUS v. SAM JOHNSON & SONS FISHERIES COMPANY, INC. AND ANOTHER.[1]

February 24, 1933.

No. 29,263.

*Dunn & Butchart,* for relator.

*Homer Gannaway,* for employe-respondent.

HILTON, JUSTICE.

Certiorari on the relation of an insurer to review a decision of the industrial commission awarding compensation for accidental injury.

The only question involved is whether or not Melhus was in the employ of Sam Johnson & Sons Fisheries Company, Inc. of Duluth at the time of the accident. That company was engaged in the general fish business, including the soaking and sale of lutefisk, the latter occupation being a seasonal one, lasting from early winter to about the middle of March. Melhus was an expert in that line and had worked for the company during the season of 1930-1931. The company was practically owned by John Johnson and was wholly operated by him. His acts here involved were those of the company. It had no facilities in its regular Duluth quarters for treating lutefisk. In previous years it had rented a near-by build-

[1]Reported in 247 N. W. 2.

ing for that purpose; none such was available for the year 1932. Johnson learned of a suitable building in West Superior, Wisconsin, and rented it; the Johnson company's money paid the rent.

Johnson rented the West Superior place in the name of the Scandinavian Fish Products Company. He was desirous of securing a share of the Wisconsin lutefisk business, which he could not do if using the Johnson company name; hence the use of the new name— a trade-name. Two persons, Moe and Wenberg, were successful in obtaining Wisconsin orders for the Scandinavian company. Moe was so anxious for a position that he loaned the Johnson company $250 and took its note therefor. A bank account was opened in West Superior in the name of the Scandinavian company. In it the borrowed money and other money of the Johnson company was placed.

Previously, when soaking lutefisk in Duluth in a separate building, the Johnson company kept but one set of books for all its activities. Because of the distance the West Superior plant was from the home place, a separate set of books was kept there and monthly reports thereof sent to the Johnson company home office. These reports showed the amount of dry fish sent from Duluth to the West Superior place, the amount of soaked fish (about 75 per cent) sent back to Duluth, and the disposition of the remainder. As between the Duluth plant and the one in West Superior, the former was credited with ten per cent of the profits.

After working two and a half days in the West Superior plant Melhus received an injury resulting in the permanent loss of vision of his left eye, for which compensation was allowed. The amount thereof is not questioned.

Melhus testified that he was working for the Johnson company, that Johnson hired him, fixed his compensation, and directed him as to the work to be done and how to do it; that he was to be paid in Duluth by the Johnson company; and that he never knew anything to the contrary. Johnson's testimony as to the employment of Melhus was to the same effect. All the money for the Scandinavian company was furnished by the Johnson concern.

The claim of relator is that the Scandinavian company was a partnership made up of Johnson, Moe, and Wenberg, and that Melhus was working for that company. Some of Wenberg's testimony was favorable to relator in that regard, although he knew nothing about how Melhus was hired. He admitted that Johnson controlled the business and that certain purchases made for the Scandinavian company were charged to the Johnson company. Johnson and Moe testified that there was no partnership arrangement and that Moe and Wenberg were hired by the Johnson company. They were to receive salaries.

The conflict in the testimony clearly presented a fact issue for the referee, who awarded compensation, and for the commission, which affirmed the award on appeal. There is no question but that the testimony showing that Melhus was an employe of the Johnson Company was sufficient, if believed, to warrant the conclusion reached. True, there were some inconsistencies pointed out in the testimony of Johnson and Moe, but they were not sufficient to require the referee or the commission to find otherwise than they did. The award must stand. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10426, note 24.

If the Scandinavian company was a separate concern it would not have mattered. Melhus had a right to know for whom he was working. There is no question but that he thought he was working in West Superior for the company which had hired him. His employment could not be transferred from the Johnson company to another concern so as to make the latter his employer without his consent. Murray v. Union Ry. Co. 229 N. Y. 110, 127 N. E. 907. The Johnson company directed him as to where he was to work and how his work was to be performed. The relation of employer and employe continued to exist between them. Under such circumstances the employer is liable under the compensation act for injuries sustained by the employe while performing the work so assigned to him, although such work was performed for a third party. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636; Scott v. O. A. Hankinson & Co. 205 Mich. 353, 171 N. W. 489.

The Johnson company and its insurer were liable for the compensation awarded.

Affirmed.