KATIE POCRNICH v. SNYDER MINING COMPANY
AND OTHERS.
GEORGE H. ST. CLAIR AND ST. PAUL MERCURY
INDEMNITY COMPANY, RELATORS.[1]

January 26, 1951.

No. 35,316.

*Stone, Manthey & Carey,* for relators.

*John H. Louisell,* for respondent Katie Pocrnich.

[1]Reported in 45 N. W. (2d) 794.

*Nye, Montague, Sullivan, Atmore & McMillan* and *Richard H. Hastings,* for respondent Snyder Mining Company.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission made May 12, 1950, awarding Katie Pocrnich, widow of Dan Pocrnich, deceased employe, compensation for his death on August 2, 1948, in an accident arising out of and in the course of his employment by relator.

It is not disputed that deceased met death in an accident arising out of and in the course of his employment. Relators assert, however, that at the time thereof deceased was an employe of respondent Snyder Mining Company rather than relator George H. St. Clair. The issue to be determined is whether the evidence is sufficient to sustain the commission's finding that prior to his death deceased had terminated his employment with Snyder Mining Company and entered into a new employment agreement with St. Clair.

Deceased had worked for Snyder Mining Company for more than 18 years. During July 1948, the latter entered into a written agreement with St. Clair under which St. Clair was to complete a drilling operation on land owned or leased by the company. Under the agreement, he was to keep his employes on the payroll of the Snyder company until he had procured a proper workmen's compensation insurance policy protecting them, but, in any event, not later than July 15, 1948. The Snyder company was to pay the men retained on its payrolls up to July 15, but St. Clair was to reimburse the company for such payment.

On or about July 7, 1948, St. Clair moved his equipment to the property to commence work. At that time he found that two men of his crew had failed to arrive, and he notified the Snyder company to such effect, requesting the loan of two of its employes until he could replace them. Albert Des Rosier, the foreman employed by the Snyder company, thereupon talked to deceased and his fellow employe and crew member, Eugene I. Dragisich, asking them whether they would go over and work for St. Clair on a

temporary basis. This they did, starting July 13, 1948, Dragisich working for about three days and deceased for approximately 15 days. On July 30, 1948, while thus employed, deceased was injured as the result of the explosion of a flywheel on St. Clair's drilling equipment and died August 2, 1948.

It is not disputed that all tools and equipment used by deceased in connection with the work to be performed by St. Clair were owned by him; that St. Clair was in charge of all operations when present; and that otherwise his foreman was in charge of the crew. He had procured a workmen's compensation policy covering all his employes at the time of the accident. He kept the usual business records of a contractor showing hours worked, wages, and deductions for income tax and social security. He concedes that the operations were entirely under his control and that no supervision whatever was exercised by the Snyder company. He had power to choose his own employes and discharge them at will.

Since deceased died immediately prior to his payday, which was August 5, 1948, he did not receive his pay check from St. Clair before his death. However, the check had been drawn by St. Clair from his funds and was thereafter held by him until appointment of an administrator in Pocrnich's estate. Dragisich, deceased's fellow employe, was paid by St. Clair for the time during which he and deceased worked together for him.

Relators assert here that the burden rested upon Snyder Mining Company to establish that the transfer of deceased as employe from Snyder Mining Company as employer to St. Clair as employer was with the knowledge and consent of deceased, and that the record fails to disclose evidence sufficient to support a finding to such effect.

■ It is not disputed that the relationship of master and servant existed between Snyder Mining Company and deceased up until the date of the latter's conversation with Albert Des Rosier, foreman of the Snyder company. It is well settled that the Snyder company could not arbitrarily terminate such relationship by loaning its employe to another without the former's consent. The right

of an employe to select his employer is elementary under our constitution as well as our system of free enterprise. An employer, however, may transfer an employe to another employer so that for a time the latter becomes the employer if such transfer is made with the knowledge and consent of the employe. Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W. (2d) 182; Crawford v. D. M. & I. R. Ry. Co. 220 Minn. 225, 19 N. W. (2d) 384; Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399; Melhus v. Sam Johnson & Sons Fisheries Co. Inc. 188 Minn. 304, 247 N. W. 2.

The consent to such transfer need not be express. If it be established that an employe thus transferred had or acquired knowledge of the substitution of employers and thereafter, with such information in mind, continued under the new employer, he will be deemed to have accepted such new employer, at least during the period subsequent to such knowledge and continued employment. Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221.

■ Upon these well-settled principles and upon a careful examination of the record, it appears that the commission's finding on the issue of consent in the instant case is amply sustained. Albert Des Rosier, foreman for the Snyder company, testified as to the conversation with deceased and his fellow employe, Eugene I. Dragisich, on July 9, 1948, pursuant to which the transfer was made, as follows:

"* * * I told Dan that the company intended to have a tailing pond over east of Kittsville and that the fee owners demanded that a drill hole be put down there to see if there was any iron ore there and *Mr. St. Clair* [relator] *was to drill this test hole* and that he was short a couple of men *and he asked the company to loan him a couple of men* * * * I asked Dan and explained to him that we were not too busy with the drilling in the pit on his own job and asked him and the other lad [Dragisich] if they would be willing to go over, and *Dan asked me what the money was, and I told him it would have to be the same as he was getting at the Webb, or it*

*might be more, I didn't know just what St. Clair was paying."*
(Italics supplied.)

And further:

"After I explained to Dan that the pay would be the same, and he knew he was going over there temporarily, he was satisfied, and he said he would go over."

Eugene I. Dragisich, who worked in the same crew with deceased, testified as to this conversation while deceased was present as follows:

"* * * he [Des Rosier] told me that they were going to do some exploration drilling, and that the fellow he'd made the contract with didn't have enough men so *we would belong to this man until he could replace us."* (Italics supplied.)

He testified further that he and deceased met St. Clair at Hibbing; that he worked for approximately three days, when one of the absent employes of St. Clair showed up so that he was able to return to his regular work for the Snyder company, but that deceased continued on.

On cross-examination, Dragisich stated that it was correct to say that Des Rosier asked rather than ordered that he and deceased go to work for St. Clair; that he and the deceased went to Hibbing to obtain St. Clair's machinery; that thereafter they went out to the location and set it up; that they both received their instructions from St. Clair, who was there much of the time; and that they received no orders or instructions from anybody connected with the Snyder company. Asked whether deceased said anything to him about whether or not he (deceased) liked working for St. Clair, he answered: "He didn't particularly dislike working for him, but it wasn't organized very well." With reference to the termination of his own employment by St. Clair, Dragisich testified that deceased was the one who informed him thereof, and that deceased had received a telephone call from St. Clair to such effect.

Dragisich also testified that prior to transferring to St. Clair he and deceased had held a conversation with John Maney, one of the superintendents of the Snyder company, and that the latter "told us * * * the same as Mr. Des Rosier did, that Mr. St. Clair didn't have * * * men to work with except this one"; that he and deceased were to work for St. Clair until replacements arrived; and that when St. Clair replaced them with other men they would then return to work for the Snyder company.

From the foregoing, it seems clear that at the time of his death on August 2, 1948, Dan Pocrnich was working for St. Clair, and that the change of his employment from the Snyder company to St. Clair was with his full knowledge and consent, both express and implied. This is evidenced both by the conversation related and by his conduct subsequent to the transfer. It follows that the commission's decision that St. Clair was deceased's employer at the time of his death finds ample support in the record and must be affirmed.

Respondent Katie Pocrnich, not a contestant here but who appeared by counsel and filed a brief in this court, is allowed $100 attorney's fees over and above her costs and disbursements.

Affirmed.