MARY L. DARVELL v. PAUL A. LAURENCE COMPANY
AND OTHERS.
CITY OF INTERNATIONAL FALLS AND ANOTHER,
RELATORS.[1]

March 27, 1953.

No. 35,883.

*John M. Prins,* for relators.

*Shepley, Severson & Johnson,* for respondents Paul A. Laurence
Company and Employers Mutual Liability Insurance Company.

*Paul J. Louisell* and *John H. Louisell,* for respondent Mary L.
Darvell.

[1]Reported in 57 N. W. (2d) 831.

DELL, JUSTICE.

Certiorari upon the relation of the city of International Falls and its insurer, Anchor Casualty Company, to review an order of the industrial commission awarding compensation to petitioner, Mary L. Darvell, for the death of her husband against the city and its insurer and dismissing the petition as to respondents the Paul A. Laurence Company and its insurer, Employers Mutual Liability Insurance Company.

Both the city of International Falls (referred to as the city) and the Paul A. Laurence Company (referred to as the company) concede that the death of Con N. Darvell (referred to as deceased) was caused by an accident arising out of and in the course of his employment and that petitioner is entitled to receive compensation benefits on account of his death. The sole issue before us is whether, at the time of his death, deceased was the employee of the city.

■ The rule is well established that the findings of the commission upon a question of fact must be sustained unless from the evidence and permissible inferences reasonable minds are required to adopt and reach a conclusion contrary to the findings of the commission. Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172; Schoewe v. Winona Paint & Glass Co. 155 Minn. 4, 191 N. W. 1009; State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; 6 Dunnell, Dig. & Supp. § 10426.

■ The company, in 1950, was engaged in building a dock on Norway Island in Rainy Lake approximately 11 miles from the city. The work was being done for the Minnesota and Ontario Paper Company and the Minneapolis and St. Louis Railway Company; the city had no interest in it. There was a road over the surface of the ice from the mainland to the island, a distance of about two miles. On or about March 1 a heavy snowstorm blocked the road. The company was anxious to open it in order to complete the work before the spring breakup. This required heavy snow-plow equipment. On March 2 the company's superintendent, John Carlson,

and its foreman, Leo Prevost, asked the city's street commissioner, Pat Murray, for the rental of a heavy truck and snowplow to open the road. They explained the necessity of opening the road rapidly. Murray told them that he had no authority to rent equipment and referred them to a city alderman. Alderman Walter Lindvall was interviewed. He told them that if Murray could spare the equipment it was agreeable with him. It was anticipated that the work might take from a day to a week. Carlson and Prevost reported to Murray, and tentative arrangements were made for the rental of the equipment. It was agreed between Murray, acting for the city, and Carlson and Prevost, acting for the company, that if the equipment was rented two of the city's men should operate the truck and snowplow in opening the road and that, while engaged in the work for the company, the men should be employees of the company and not of the city.

Lawrence Grover and deceased were regular employees of the city. As a part of their duties they operated the city's snow-plow equipment. Murray talked to Grover and deceased and asked them whether they wanted to do the plowing for the company. He did not instruct them to do so; he left it up to them to make their own decision. They were told that if they did the work they would be the company's employees, not the city's, and that after the work was finished they would return to their work for the city. There is no dispute about this arrangement, and the employees agreed to it.

Grover testified:

"Q. Mr. Grover, when you talked with Pat Murray [the city's street commissioner] sometime during the forenoon of March 2 he told you and Con Darvell you could suit yourselves, you could go on the job or you didn't have to go?

"A. That's right, sir.

"Q. It was left up to you?

"A. Yes.

\* \* \* \* \*

"Q. You were told by Mr. Prevost, the foreman for the Paul Laurence Company, that you were working for Paul Laurence?

"A. Yes, sir.

"Q. And before you started to work on that job he told you that you would be paid by Paul Laurence?

"A. Yes, sir.

Prevost, the company's foreman, testified:

"Q. You, Mr. Prevost, of course, considered that these men were employes of the Paul Laurence Company?

"A. At the time, yes, of the snow plowing."

On March 2, Grover and deceased plowed out part of the road. Prevost went along with the equipment and was present during the plowing; before they started, he directed the men where to plow. Before they commenced work, he asked them for and obtained their social security numbers and put them on the payroll of the company. The company paid for their services; they were removed from the city's payroll. On the following day, while continuing with the work at a point about ten miles from the city and while Prevost was present representing the company, deceased was killed.

No one from the city was present at any time during the snow-plowing operations. The city was not engaged in the business of renting out equipment. The truck and snowplow had never been rented or loaned before. There were a few prior occasions when other equipment had been rented out by the city but in most instances the city was interested in the project or else it could reasonably be inferred that it was done as an accommodation. After the accident the company paid the city $17.50 for the use of the equipment. There had been no agreement before the work commenced as to the rent to be paid. The fair inference to be drawn from the evidence is that the equipment was rented to the company as an accommodation because of the urgency of the situation and not for profit.

Paul Laurence, the president of the company, shortly after the accident told some of the aldermen at the city hall that deceased was his employee and that he would take care of the widow. He also told Mrs. Darvell substantially the same thing. He made out

a check of $100 to her as a gift. He reported the accident to his compensation insurer as an accident of the company. The insurer accepted the obligation and made compensation payments to the widow and children for a time but finally thought better of that and discontinued payments. The widow then filed a petition with the commission for compensation benefits naming the company, the city, and their insurers as parties. Thereafter the commission made an order directing the company's insurer to continue the compensation payments until an award was made.

The referee made findings that the deceased, at the time of the accident, was an employee of the city and made an award accordingly. The findings and award were sustained by the commission upon an appeal. Neither the referee nor the commission attached any memorandum stating their reasons for their decision.

It is claimed by relator that upon the record as a matter of law the company was the employer of the deceased. In determining whether the relationship of employer and employee exists, "Each case * * * must be controlled by its own facts." Ledoux v. Joncas, 163 Minn. 498, 501, 204 N. W. 635, 636; Campbell v. Connolly Contracting Co. 179 Minn. 416, 229 N. W. 561.

M. S. A. 176.01, subd. 5, defines "employer" to be:

"The term 'employer' means every person who employs another to perform a service for hire and to whom the 'employer' directly pays wages, * * *."

While the payment of wages does not necessarily determine who is the employer, the statute must be given proper consideration along with the other evidence.

Where the evidence is free from conflict as to the controlling facts, the question of whether a person is an employee becomes one of law. Ledoux v. Joncas, *supra*.

In the case of Crawford v. D. M. & I. R. Ry. Co. 220 Minn. 225, 229, 19 N. W. (2d) 384, 387, the court stated:

"* * * A new master cannot be foisted upon a servant unwittingly. The right to select one's employer is implicit in freedom

from involuntary servitude. An employer may loan his employe to another so that for the time being the employe becomes the servant of the latter, but this can be done only with the employe's assent."

In the case of Pocrnich v. Snyder Min. Co. 233 Minn. 81, 84, 45 N. W. (2d) 794, 796, the court again stated:

"* * * An employer, however, may transfer an employe to another employer so that for a time the latter becomes the employer if such transfer is made with the knowledge and consent of the employe. * * *

"The consent to such transfer need not be express. If it be established that an employe thus transferred had or acquired knowledge of the substitution of employers and thereafter, with such information in mind, continued under the new employer, he will be deemed to have accepted such new employer, at least during the period subsequent to such knowledge and continued employment."

Other cases with like holdings are Yoselowitz v. Peoples Bakery, Inc. *supra;* Benson v. Lehigh Valley Coal Co. 124 Minn. 222, 144 N. W. 774, 50 L.R.A.(N.S.) 170; Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399; Melhus v. Sam Johnson & Sons Fisheries Co. Inc. 188 Minn. 304, 247 N. W. 2; and Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W. (2d) 182.

We hold that under the evidence here as a matter of law the deceased, at the time of the accident, was an employee of the company. Our reasons are as follows: The city had no interest in the construction of the dock or in opening the road. Nothing was being done to further the business of the city. The city was not engaged in the business of renting out its equipment. The rental of the equipment here was more in the nature of an accommodation than an undertaking for profit. Grover and deceased were not required to do the plowing for the company. They voluntarily agreed to act as the company's employees in the performance of the work. They were taken off the city's payroll and placed on the company's payroll and the company paid for their services. The control of the details of the snowplowing was under the company's foreman,

Prevost. True, he did not exercise much supervision, but he had the right to do so. "The degree to which direction and control is exercised is not so important as the manifest right to direct and control where controversy may arise." Herron v. Coolsaet Bros. 158 Minn. 522, 527, 198 N. W. 134, 136. On the record here the company possessed the right to discharge both Grover and the deceased from the snow-plowing job. While it is true that their discharge might have resulted in the company's loss of the use of the city's equipment, that does not alter the fact that the company could discharge them.

There was a practical construction given to the contract by all of the parties. This is shown by these facts: The company placed the men on their payroll, paid their wages, and supervised the work as far as any supervision was necessary. It reported the death to its compensation insurer as being the death of one of its employees. The insurer also treated deceased as one of the company's employees and assumed its obligation on this basis by commencing payments under the act to the widow and children of deceased. The company did everything that an employer usually does with respect to the death of an employee and so did the company's insurer. The city did none of the things that an employer usually does under such circumstances. This practical construction of the contract is entitled to consideration here.

While the facts in no two workmen's compensation cases are alike, the case of Pocrnich v. Snyder Min. Co. *supra,* lends support to the holding here.

Respondent relies upon and cites as its controlling cases Campbell v. Connolly Contracting Co. *supra,* and Turner v. Schumacher Motor Express, Inc. *supra.* Both cases are distinguishable from the case here. In each of those cases the employee, as a part of his employment, was ordered and directed by his employer to work for a third party. The employee had no choice in the matter. He did not consent to any change in employment nor did he accept the third party as his employer. The situation is otherwise here. There are

also other obvious distinguishing features but they need not be detailed here.

We have pointed out in several opinions that in workmen's compensation cases there are many tests that may and should be considered in determining the ultimate fact issue of who was the employer of the workman at the time of the accident. These tests necessarily vary with the facts of each case. Sometimes a test means much and sometimes little depending upon all of the facts and circumstances of the case. They are to be used as an aid to the determination of the issue of who was the employer; they are not to be used to the extent that they destroy the purpose for which their use was intended. Neither should they be permitted to obscure the plain facts in any case.

Reversed and remanded to the industrial commission with directions to dismiss the proceeding as to the city and its insurer and to enter findings and an award against the company and its insurer in conformity with this opinion including a return to the city and its insurer of any compensation benefits paid by them.

An allowance to the petitioner of $250 attorney's fees is granted together with the costs in this court.

Reversed.