David HALLAS, Respondent,

v.

NAEGELE OUTDOOR ADVERTISING,
INC., Defendant and Third-Party
Plaintiff, Appellant,

v.

JOHNSON BILLBOARD POSTING
SERVICE, INC., Third-Party
Defendant, Respondent.

No. CX–95–1371.

Court of Appeals of Minnesota.

Dec. 12, 1995.

Review Denied Feb. 9, 1995.

William M. Hart, Katherine A. McBride, W.D. Flaskamp, Meagher & Geer, P.L.L.P., Minneapolis, Kenneth F. Daniels, Minneapolis, for David Hallas.

Joseph M. Goldberg, Peter J. Manderfeld, Joseph M. Goldberg & Assoc., St. Louis Park, for Naegele Outdoor Advertising, Inc.

Lawrence J. Skoglund, Erstad & Riemer, P.A., Minneapolis, for Johnson Billboard Posting Service, Inc.

Considered and decided by LANSING, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

Naegele Outdoor Advertising, Inc., appeals the district court's denial of its summary judgment motion, arguing that because it provided workers' compensation coverage for David Hallas, an employee of a Naegele subcontractor, it is entitled to tort immunity under Minn.Stat. § 176.031 (1994) by exercise of the election provided by Minn.Stat. § 176.041, subd. 1a(f) (1994). The district court held that because Hallas was not an independent contractor but, rather, the employee of an independent contractor, Minn. Stat. § 176.041, subd. 1a(f), did not apply. We affirm.

## FACTS

In March 1991, Naegele Outdoor Advertising contracted with Johnson Billboard Posting Service, Inc., to have Johnson Billboard post bills on Naegele's billboards. The contract required that Johnson Billboard

> be solely responsible for any and all of its wages, salaries, insured or uninsured benefits, taxes, withholding or payments to or on behalf of its employees, officers and agents * * *.

Naegele, however, agreed to provide the legally required workers' compensation and liability coverage for Johnson Billboard's employees:

> The [c]ontractor agrees to elect to cover the [s]ubcontractor, as well as any employees, independent contractors, or other individuals utilized by [s]ubcontractor, for workers' compensation purposes. Contractor will obtain an insurance policy providing such coverage.

David Hallas had been hired by Johnson Billboard in June 1989 to work as a bill poster, pasting bills onto billboards. In September 1991, Hallas sustained severe injuries when a Naegele billboard platform on which he was standing gave way, causing him to fall approximately 17 feet.

Hallas subsequently began receiving workers' compensation benefits under a policy paid for by Naegele. To date, he has received benefits totaling $182,000. In December 1993, Hallas sued Naegele in tort for injuries sustained due to the negligent design and maintenance of the billboard platform. Naegele impleaded Johnson Billboard, Hallas' employer, as a third-party defendant, alleging that Johnson Billboard had negligently trained Hallas.

Both Naegele and Johnson Billboard moved for summary judgment, arguing that their contract, which provided workers' compensation coverage for Hallas, made them immune from tort liability with respect to Hallas' injury. Both motions were denied, and Naegele appeals.

## ISSUES

**I.** Is a general contractor who provides workers' compensation coverage to the employee of an independent contractor entitled to the immunity protection of Minn.Stat. § 176.031?

**II.** Does the election provision of Minn. Stat. § 176.041, subd. 1a(f), apply to the employees of an independent contractor as well as the independent contractor himself?

## DISCUSSION

■ An order denying a motion for summary judgment is ordinarily not appealable unless the question presented has been certified to this court as important or doubtful. *McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 832 (Minn.1995) (citing Minn.R.Civ.App.P. 103.03). However, the Minnesota Supreme Court has held:

> [A]n order denying summary judgment in an employee's negligence action is immediately appealable when dismissal is sought based on the district court's lack of subject matter jurisdiction.

*Id.* at 831–32. Naegele seeks dismissal based upon statutory immunity. Thus, the district court order denying Naegele's motion for summary judgment is immediately appealable.

■ This case involves the interpretation of a statute, a question of law which this court reviews *de novo. Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). Naegele argues that under the terms of Minn.Stat. § 176.041, subd. 1a(f) (1994), it is entitled in this case to the immunity provided by Minn. Stat. § 176.031 (1994). The district court rejected Naegele's arguments that Hallas was a statutory employee on two grounds: first, that Naegele's position was contrary to the plain language of the statute; and second, that Naegele's interpretation of the statute was inconsistent with the "loaned servant doctrine."

## I.

■ Minn.Stat. § 176.031 provides tort immunity to employers who provide workers' compensation coverage to their employees as required by the Workers' Compensation Act:

> The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death. If an employer other than the state or any municipal subdivision thereof fails to insure or self-insure liability for compensation to injured employees and their dependents, an injured employee, or legal representatives or, if death results, from the injury, any dependent may elect to claim compensation under this chapter or to maintain an action in the courts for damages on account of such injury or death.

*Id.* Although independent contractors are generally not covered by the Act, Minn.Stat. § 176.041, subd. 1a(f), allows an employer to avail itself of the immunity protection of the Act by electing to provide workers' compensation coverage for an independent contractor. The statute provides, in relevant part:

> The persons, partnerships, limited liability companies, and corporations described in this subdivision may elect to provide the insurance coverage required by this chapter.

> \*  \*  \*  \*  \*  \*

> (f) A person, partnership, limited liability company, or corporation hiring *an independent contractor,* as defined by rules adopted by the commissioner, may elect to provide coverage for *that independent contractor.*

> \* \* \* Any person for whom coverage is elected pursuant to this subdivision shall be included within the meaning of the term employee for the purposes of this chapter.

Minn.Stat. § 176.041, subd. 1a(f) (emphasis added).

Naegele argues that Hallas became its statutory employee for purposes of the Workers' Compensation Act when it elected to provide workers' compensation coverage for Johnson Billboard and its employees. It makes no sense, argues Naegele, to speak of Johnson Billboard as its statutory employee

because Johnson Billboard, as a corporation, is a legal fiction incapable of incurring an injury. Thus, according to Naegele, it exercised its option under Minn.Stat. § 176.041, subd. 1a(f), when it elected to provide coverage for the employees of its subcontractor.

The district court concluded, and we agree, that Naegele's position is contrary to the plain language of the statute. The statute provides, in pertinent part, that a "corporation hiring an independent contractor * * * may elect to provide coverage for that independent contractor * * *." Minn.Stat. § 176.041, subd. 1a(f). According to the district court judge, Hallas was not "an independent contractor" but, rather, an employee of that independent contractor. It would be anomalous, explained the district judge, to apply the exclusivity provision to an elective employer who does not actually hire the employee as required by Minn.Stat. § 176.041, subd. 1a(f).

Indeed, the statute does distinguish between "independent contractors" and "employees of independent contractors." Minn. Stat. § 176.041, subd. 1(*l*), provides that the Workers' Compensation Act does not apply to independent contractors, "except that this exclusion does not apply to an employee of an independent contractor." *Id.* Had the legislature intended to allow Naegele to elect to become Hallas's statutory employer under Minn.Stat. § 176.041, subd. 1a(f), it could have done so simply by providing that a corporation hiring an independent contractor "may elect to provide coverage for that independent contractor [*or the employees of that independent contractor* ]." *See* Minn.Stat. § 176.041, subd. 1a(f).

■ The purpose of the election provision is to allow more workers to be brought within the scope of the Act. There was no need to add the additional language above, because the employees of an independent contractor are already required to be covered under the Act. *See* Minn.Stat. § 176.041, subd. 1(*l*). Thus, providing Naegele with the election option in this instance would not further the statutory goal.

Furthermore, under the statutory scheme of the Workers' Compensation Act, the term "independent contractor" refers generally to individuals and not corporations. Chapter 5224 of the Minnesota Rules is devoted primarily to distinguishing between employees, who are covered by the Workers' Compensation Act, and independent contractors, who are not covered by the Act. The first section of the chapter states:

> The purpose of this chapter is to establish standards for distinguishing between an employee and an independent contractor for purposes of workers' compensation coverage under Minnesota Statutes, sections 176.021, and 176.041.

Minn.R. 5224.0010 (Supp. II 1994). Throughout the chapter, independent contractors are referred to as "individuals" and not as corporations. *See, e.g.,* Minn.R. 5224.0340 (1993). We are confident, therefore, that the legislature enacted Minn.Stat. § 176.041, subd. 1a(f), for the purpose of bringing more individuals who work as independent contractors, such as independent barbers, carpenters, electricians, photographers, taxicab drivers, etc., within the scope of the Workers' Compensation Act. Again, had the legislature intended the election provision to apply to "employees of independent contractors," who are already entitled to workers' compensation coverage, it could have used that language as it did in section 176.041, subdivision 1(*l*).

Under the plain language of Minn.Stat. § 176.041, subd. 1a(f), Hallas is the employee of an independent contractor and thus is not the employee of Naegele for purposes of the Workers' Compensation Act. The Act specifically allows Naegele to elect to provide workers' compensation coverage for an independent contractor, not the employees of an independent contractor. *Id.* Thus, Naegele did not provide coverage to Hallas pursuant to Minn.Stat. § 176.041, subd. 1a(f). Rather, Naegele provided the coverage pursuant to an independent assumption agreement that it made with Johnson Billboard.

## II.

■ As the district court judge noted, Naegele's position is also inconsistent with the "loaned servant doctrine." Under the loaned servant doctrine, a worker can be

considered an employee of both a general employer (Johnson Billboard) and a special employer (Naegele). In such a case, the special employer becomes liable to the employee for purposes of the Workers' Compensation Act and is immune from the employee's tort claims. *Rademaker v. Archer Daniels Midland Co.*, 310 Minn. 240, 244, 247 N.W.2d 28, 29 (1976).

■ The district court judge found that the "loaned servant doctrine" did not, as a matter of law, apply to this case because, taking the facts in a light most favorable to Hallas, Naegele had not satisfied the required elements. Nonetheless, the judge found that the doctrine has some persuasive authority regarding the issue of employee consent. The loaned servant doctrine requires, among other things, the express or implied consent of the employee to the employment relationship before the common law right to sue for tort can be surrendered. *See Rademaker*, 310 Minn. at 244, 247 N.W.2d at 32; *see also Danek v. Meldrum Mfg. & Eng'g Co.*, 312 Minn. 404, 409, 252 N.W.2d 255, 259 (1977).

Here, on motion for summary judgment, the court could not say that Hallas had consented to an employment relationship with Naegele. The statutory scheme of the Workers' Compensation Act makes it clear that it is the employee/employer relationship that is determinative of who is entitled to tort immunity. The Minnesota Supreme Court has stated that the Workers' Compensation Act "was clearly intended to control only the rights between employer and employee * * *." *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615, 618 (1974). As the loaned servant doctrine suggests, it would be inequitable to force Hallas to surrender common law rights to bring suit against a "statutory employer" when he has not consented to an employment relationship. If such were the law, Hallas would lose his right to bring a third-party tort action while gaining nothing at all because he is already

entitled to workers' compensation coverage as an employee of Johnson Billboard.

Naegele argues that requiring the consent of each individual employee before allowing Naegele to exercise its election option under Minn.Stat. § 176.041, subd. 1a(f), would lead to unjust results, effectively precluding Naegele from availing itself of the immunity protection offered by Minn.Stat. § 176.031. Naegele maintains that it would be unduly burdensome to require a general contractor to obtain the individual consent of each covered employee in a case such as this, because every time Johnson Billboard hired a new employee, Naegele would be required to obtain the employee's consent.

This argument begs the question because it assumes that the legislature intended to allow Naegele to make the election under these circumstances, the very question at issue here.[1] Furthermore, it appears that the reason it would be difficult for Naegele to keep track of Johnson Billboard's employees and to obtain their consent is because Naegele is simply not their employer.

### III.

Naegele suggests that "immunity" is the "quid pro quo" it receives for providing workers' compensation coverage to Hallas. Naegele implies that its arrangement with Johnson Billboard somehow benefits Hallas. We think, however, that the only perceptible benefit is to Naegele. Naegele would gain immunity at the expense of Hallas, who gains nothing. In addition, because Naegele has assumed Johnson Billboard's legal obligation to provide workers' compensation coverage, Johnson Billboard is presumably able to offer its services to Naegele at a lower contract price. The situation is analogous to a general contractor who hires a subcontractor to paint a building. If the general contractor agrees to supply the paint, the obvious quid pro quo is that the subcontractor paints the building for a lower price than it would if the

1. Alternatively, Naegele argues that if Hallas's consent was required, he impliedly consented because he was aware that Naegele was providing his coverage and yet he did not object. This argument, however, also begs the question because it assumes that Hallas would think he had a reason to object. To the contrary, Hallas appears to believe that Naegele's agreement with Johnson Billboard did not have any bearing on his rights to bring a tort action against Naegele.

general contractor had not supplied the paint.

Thus, we see that Naegele is seeking tort immunity in addition to the quid pro quo it has already received in the form of a lower contract price from Johnson Billboard. Rather than making the election under Minn. Stat. § 176.041, subd. 1a(f), however, it appears that Naegele has merely assumed Johnson Billboard's legal obligation. Such an agreement should in no way affect the rights of third parties who are strangers to the agreement. Consequently, if Naegele is entitled to any quid pro quo in this case, it must come from Johnson Billboard and not from David Hallas.

■ Hallas, as mentioned, is already entitled to workers' compensation coverage as an employee of Johnson Billboard. If Johnson Billboard were to fail to provide coverage, Naegele would be statutorily liable for such benefits even in the absence of an agreement to provide them. *See* Minn.Stat. § 176.215. In addition, as the Minnesota Supreme Court has recognized, Hallas would still be entitled to bring a third-party action against a general contractor even when the general contractor has become directly liable for workers' compensation coverage due to the subcontractor's failure to provide such coverage. *See Klemetsen v. Stenberg Constr. Co.*, 424 N.W.2d 70 (Minn.1988). In *Klemetsen*, the Minnesota Supreme Court stated:

> There seems to us little reason to construe section 176.215 to insulate the contractor who hires an uninsured subcontractor from a liability to which it would otherwise be exposed and to deprive an injured employee of an uninsured subcontractor, and no other injured worker, of the right to seek full compensation through a third-party action.

*Id.* at 73. Under Minn.Stat. § 176.215, when a subcontractor fails to insure its employees, the general or immediate contractor becomes liable for all compensation benefits due the subcontractor's injured employee. *Id.* at 72. The *Klemetsen* court held, however, that a general contractor who is liable for such compensation is not immune from a tort action by the subcontractor's injured employee. *Id.*

The court also noted the following:

> Although a majority of states may regard a contractor's compensation liability as exclusive, the workers' compensation acts of other states specifically provide that a general contractor who is liable for benefits shall be considered the employee's employer for purposes of the exclusive remedy provision of the act.

*Id.* at 72 (citations omitted). Similarly, as already discussed, the statute at issue in this case does not explicitly provide that a general contractor may "elect" to provide coverage to employees of an independent contractor, thus making it a statutory employer. *See* Minn.Stat. § 176.041, subd. 1a(f).

In *Klemetsen*, a general contractor was involuntarily held liable, under Minn.Stat. § 176.215, for workers' compensation benefits to an uninsured subcontractor's employee. Nonetheless, the court still found the general contractor to be subject to a tort action by the employee. In the case before us, the equities of the immunity issue are even less in favor of the general contractor. Naegele has voluntarily contracted with its subcontractor to provide workers' compensation coverage that Hallas was already legally entitled to. If an involuntary provider of workers' compensation benefits cannot avail itself of the tort immunity of the Workers' Compensation Act, it would follow, *a fortiori*, that Naegele, a voluntary provider, cannot escape tort liability exposure.

The statutory scheme of the Workers' Compensation Act was stated by the legislature as follows:

> The workers' compensation system in Minnesota is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

Minn.Stat. § 176.001. The Minnesota legislature has not indicated its desire to violate this basic principle by depriving a worker of a substantial common law right without giving the worker anything in return. *See Smogard*, 298 Minn. at 368, 215 N.W.2d at 619. Yet, we are asked to deny Hallas's right to a third-party tort action as a consequence of a contract to which he is not a party. We find nothing in equity nor in the plain language of the Workers' Compensation Act to support

such a result, and the Minnesota Supreme Court has already expressed its reluctance to provide general contractors with tort immunity in cases where the Workers' Compensation Act does not explicitly provide it. *See Klemetsen,* 424 N.W.2d at 73.

## DECISION

 We hold that a general contractor who agrees by contract to provide workers' compensation coverage to the employees of an independent contractor is not entitled to the immunity protection of Minn.Stat. § 176.031 by application of the election provision of Minn.Stat. § 176.041, subd. 1a(f).

**Affirmed.**