**TRAVELERS INSURANCE COMPANY,**
Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant.**

No. 1952.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 19, 1959.

Taylor, Porter, Brooks, Fuller & Phillips, Robert J. Vandaworker, Baton Rouge, La., for plaintiff.

Hynes, Mathews & Lane, George Mathews, Marcia L. Mellon, Baton Rouge, La., for defendant.

J. SKELLY WRIGHT, District Judge.

The Travelers Insurance Company, having paid substantial sums in settlement of claims against its assured, J. Ray McDermott & Company, Inc., arising out of a multiple automobile collision, is here demanding that State Farm Mutual Automobile Insurance Company, an insurer of one of the cars in the accident, contribute its policy limits[1] as its share of the settlement.

On September 30, 1956, a 1956 Chevrolet sedan, insured by State Farm, owned by Robert T. Carroll, and driven by Lindy Poole, was involved in the collision in suit in Livingston Parish, Louisiana. At the time of the accident, all of the occupants of the car, Carroll, Poole, and four coworkers employed by J. Ray McDermott, were en route from Columbia, Mississippi, to an oil well location near Lake Charles, Louisiana, where they were to erect an oil well derrick for their employer. It is stipulated between the parties that all six occupants of the car were at the time of the accident in the course and scope of their employment for J. Ray McDermott.

At the time of the accident the Chevrolet was pulling a two-wheeled trailer, laden with oil field tools. The trailer was also owned by Carroll. It was not designed for passengers, as premises for office, store or display purposes, nor was it used for business purposes with another type automobile. The trailer measured approximately four feet in width, six feet in length and approximately four feet in height.

It was the custom and practice of J. Ray McDermott & Company, Inc., to pay one member of a rig building crew, for the use of his privately owned automobile to transport himself and other members of the crew, a mileage allowance of $15 for the first 75 miles, and 10¢ per mile thereafter from the initiating point of the trip to the job site. At the time of the accident, Robert T. Carroll was using his privately owned passenger automobile under this agreement with his employer, and other members of the crew in the car at the time of the accident and was paid in accordance with this agreement. None of the passengers in the car at the time of the accident made or agreed to make any payment of any kind for their transportation to Carroll, J. Ray McDermott & Company, Inc., or anyone else. The employer did not specify the route to be taken to the job site, but designated the time and place the employees would be required to report for work at the new job site. While traveling, the employees of J. Ray McDermott & Company, Inc., received their regular wages.

Travelers Insurance Company was the liability as well as the workmen's compensation insurer of J. Ray McDermott & Company, Inc. As workmen's compensation insurer it paid workmen's compensation benefits to the occupants of the Carroll car, or their dependents, exclusive of Lindy Poole, in the total amount of $36,036.67. As liability carrier for McDermott, Travelers made compromise settlements of claims in suits

---

1. The policy has limits of $20,000 for two or more persons in any one occurrence, plus $5,000 property damage.

brought against it and J. Ray McDermott & Company, Inc., arising out of the accident in the amount of $136,606. Of this amount, $4,227.95 was expended in the settlement of property damage claims. Travelers, as insurer of McDermott and subrogated to its rights, contends that since, by reason of the negligence of Lindy Poole, its assured was liable for the compensation payments to the occupants of the Carroll car and for the tort claims of the other persons injured in the accident, State Farm must contribute to the settlement of these claims because it, too, as the insurer of the Carroll car, was liable for the negligence of Poole to the extent of its policy limits. State Farm pleads various exclusions in its policy as a defense to the action. It agrees, however, that if there is coverage, it is primary with respect to the accident in suit.

At the outset a problem of conflicts of laws is presented. State Farm's policy was delivered in Mississippi to Carroll, a resident of that state. Under the conflict of laws rule of Louisiana,[2] used in interpreting insurance contracts, the law of the state wherein the policy was delivered governs.[3] Unfortunately, a research of the Mississippi jurisprudence does not provide an answer to any of the problems presented by this litigation. This Court, therefore, is placed in the position of anticipating what a Mississippi court would do if presented with the issues in this case for determination,[4] using as a guide, not only such Mississippi jurisprudence as is available, but also any general jurisprudence on the subject which may be helpful.

The first exclusion on which State Farm relies provides that the policy shall not apply while the vehicle is being "used for carrying persons for a charge."[5] State Farm argues that the mileage which was being paid Carroll by his employer for the use of his car in transporting himself and his coemployees to the job site was such a charge as contemplated by the policy. The language immediately following the quoted provision of the policy, however, reads: "but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge." Obviously, the carrying of coemployees in itself would not exclude coverage on the policy. As far as the risk is concerned, there would be no difference whether the mileage was paid by the common employer or prorated among the coemployees. Under the circumstances,[6] and particularly in view of the limitation on the exclusion, it would appear that coverage was not excluded while the employees in suit were passengers in the car.

This "carrying persons for a charge" exclusion was apparently added to the company's printed policy form to cover situations where the insured vehicle was being used as a taxi on a temporary basis, several courts having held that such use was not within the "public or livery conveyance" exclusion which is generally found in private automo-

---

2. Conflict rule of state of forum is applied in diversity cases in federal courts. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481.

3. LSA–C.C. art. 10; Prudential Insurance Company of America v. Williams, D.C., 139 F.Supp. 202, affirmed Williams v. McFerrin, 5 Cir., 242 F.2d 53.

4. Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Cooper v. American Airlines, Inc., 2 Cir., 149 F.2d 355, 162 A.L.R. 318; Pru-

dential Insurance Company of America v. Williams, supra.

5. The exclusion, in pertinent part, reads: "(a) any of the coverages * * * while the automobile is rented or leased to others by the insured, used as a public or livery conveyance, or used for carrying persons for a charge, but the transportation on a share expense basis in a private passenger automobile of friends, neighbors, fellow employees or school children shall not be deemed carrying persons for a charge."

6. See 5A Am.Jur., Automobile Insurance, § 29.

bile policies.[7] It was not intended to cover a situation where fellow employees of the owner were being carried to work, irrespective of the fact that the employer, rather than the employees, was paying the mileage. Certainly exclusions similar to the one in suit have no application where an employee is using his own car in the course of his employment and is being reimbursed by his employer for such use on a mileage basis.[8] That, in effect, is the situation here. And the mileage is in the usual amount, sufficient only to cover expenses and perhaps upkeep of the car. In fact, except for the first 75 miles, it is precisely the amount the Government allows to its employees for use of their own cars for travel purposes.

■ It is true that there are some cases,[9] interpreting provisions similar to the one here, which exclude coverage where passengers are carried on a casual or informal basis for a charge. But in each of those cases, each passenger paid a specific amount for his carriage. Moreover, even in those cases the authorities are by no means uniform.[10] If the courts cannot with any degree of assurance, or unanimity, interpret exclusion provisions of this kind, that fact alone weighs heavily against the insurer because the fine print of the policy, where ambiguous, is construed in favor of the assured.[11]

■ The State Farm policy would also exclude coverage "while the automobile is used for the towing of any trailer owned * * * by the insured and not covered by like insurance in the company." The question presented as to applicability of this exclusion here is whether Carroll's trailer was covered by "insurance in the company." In making this determination, reference

must be had to the insuring provisions of the policy which define what is insured. The relevant provisions read as follows:

"III. Automobile Defined.

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile—the motor vehicle or trailer described in the declarations;

"(2) Trailer—under coverages * * * (for bodily injury and property damage) provided the described automobile is not classified as 'commercial,' a trailer not so described if designed for use with a private passenger automobile and if not (a) a passenger trailer, (b) a trailer used for business purposes with another type automobile, or (c) a trailer used as premises for office, store or display purposes. * * * "

Analyzing these provisions, it appears that the State Farm policy issued Carroll afforded coverage not only for the described Chevrolet, which was classified in the policy as being used for "pleasure and business," but also for a trailer not described in the policy, provided it was designed for use with a private passenger automobile and was not a passenger trailer, a trailer used for business purposes with another type automobile, or a trailer used as premises for office, store or display purposes. It is stipulated that the Carroll trailer was none of these. So the applicability of the trailer exclusion depends on whether the Carroll trailer was designed for use with a private passenger automobile. The measurements of the trailer and the photographs of the trailer, as annexed to the stipulation, demonstrate that the

7. See Annotation in 30 A.L.R.2d 277–279; 5A Am.Jur., Automobile Insurance, § 30.

8. Compare Johnson v. Continental Casualty Co., La.App., 167 So. 114.

9. Jensen v. Canadian Indemnity Co., 9 Cir., 98 F.2d 469; State Farm Mut. Automobile Ins. Co. v. Self, 5 Cir., 93 F.2d 139. Compare Ocean Accident &

Guarantee Corporation v. Olson, 8 Cir., 87 F.2d 465.

10. See Annotation, 118 A.L.R. 393; 147 A.L.R. 632.

11. United States Fidelity & Guaranty Company v. Guenther, 281 U.S. 34, 37, 50 S.Ct. 165, 74 L.Ed. 683; Imperial Fire Insurance Co. v. Coos County, 151 U.S. 452, 463, 14 S.Ct. 379, 38 L.Ed. 231.

trailer was of the utility type, similar to the kind one can rent in almost any town or city in the country for use with passenger automobiles. Under the circumstances, it would appear that the Carroll trailer was covered by his policy and the trailer exclusion does not apply.

■ The parties have spent most of the crossfire in their briefs on the so-called cross-employee exclusion in the policy which would deny coverage under the omnibus clause to "any employee with respect to bodily injury of another employee of the same employer injured in the course of such employment arising out of the maintenance or use of the automobile in the business of such employer." In support of their positions, the parties have relied primarily on Louisiana jurisprudence [12] interpreting similar, but different, exclusions. Travelers argues that the purpose of the cross-employee exclusion is to deny coverage where the common employer is the named assured. It theorizes that an employee, injured through the negligence of a coemployee in the course of their employment, vis-a-vis the common employer is limited to his claim under the state workmen's compensation act, LSA-R.S. 23:1021 et seq., and the cross-employee exclusion would give the employer's liability insurer the same protection. Travelers suggests that the assured of State Farm here is Carroll, who is himself a coemployee, not an employer, of Lindy Poole and the other occupants of his car, and consequently the cross-employee exclusion has no application.

However sound Travelers' argument may be when applied to certain types of cross-employee exclusions, it has no bearing on the cross-employee exclusion in suit. This exclusion states as plainly as language can that the policy does not cover "any employee with respect to bodily injury of another employee of the same employer injured in the course of such employment." Here the driver of the Carroll car, Lindy Poole, as well as all the passengers therein, were co-employees of the same employer, J. Ray McDermott, and it is stipulated that they were "injured in the course of such employment arising out of the maintenance or use of the automobile in the business of such employer." Consequently, by the clear language of the policy, as applied to the admitted facts in this case, the exclusion applies. Travelers, therefore, may not recover against State Farm any moneys paid to the occupants of the Carroll car.

■ With respect, however, to the settlements made with other persons injured in the collision, not passengers in the Carroll car, Travelers' claim under the State Farm policy is well founded. The State Farm policy on the Carroll car insured not only the named insured and any person operating the vehicle with the permission of the named insured, but also "any person or organization legally responsible for the use thereof." Since Lindy Poole, admittedly, was acting in the course and scope of his employment at the time of this accident, there is no question but that his employer, J. Ray McDermott & Company, Inc., was legally responsible for the use of the car at that time.[13] It was, therefore, an assured under the policy.

Since no question is raised with reference to the propriety or the advisability of the settlements made by Travelers in behalf of McDermott, and since McDermott is an assured under the State Farm policy, Travelers is subrogated to all of McDermott's rights against State Farm.

Judgment for Travelers in the amount of $24,227.95 plus interest and costs.

12. Pullen v. Employers' Liability Assurance Corp., 230 La. 867, 89 So.2d 373; Jackson v. American Automobile Insurance Co., La.App., 103 So.2d 304; Arceneaux v. London Guarantee & Accident Company, La.App., 87 So.2d 343. See also Stewart v. Liberty Mutual Insurance Company, 5 Cir., 256 F.2d 444.

13. McAllister v. Jackson Brewing Co., La. App., 6 So.2d 179. See 5 Blashfield, Cyclopedia of Automobile Law and Practice § 3078. Compare Great American Indemnity Co. v. Fleniken, 5 Cir., 134 F.2d 208.