GERADEEN DANEK, A MINOR, BY ALEX DANEK,
HER GUARDIAN, AND ANOTHER v. MELDRUM
MANUFACTURING AND ENGINEERING COMPANY, INC.

252 N. W. 2d 255.

March 25, 1977—No. 46645.

*Robins, Davis & Lyons, Stanley E. Karon,* and *Paul L. Gingras,* for appellants.

*Jardine, Logan & O'Brien, Graham Heikes,* and *Charles E. Gillin,* for respondent.

Heard before Kelly, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is an appeal from a summary judgment entered in favor of defendant, Meldrum Manufacturing and Engineering Company, Inc. (Meldrum). The trial court found as a matter of law that plaintiff Geradeen Danek, employed by Labor Pool of St. Paul, Inc. (Labor Pool), was also an employee of Meldrum when she was injured while operating Meldrum's punch press machine, and was thus barred by the provisions of the workers' compensation law from suing Meldrum as a third-party tortfeasor. For the reasons stated in this opinion, we affirm.

Labor Pool is a labor broker in the business of supplying industrial personnel to local companies for short term assistance. It advertises for and hires employees who are then sent to fill temporary jobs with other companies which are its customers. Labor Pool sets the rate of compensation and makes payment directly to these employees for the work they perform for Labor Pool's customers. Each customer, in turn, pays Labor Pool an hourly rate for the services of the temporary workers obtained. In addition to a margin for profit, the difference between the hourly rate Labor Pool pays directly to its employees and the hourly rate paid to Labor Pool by its customers is used by Labor Pool to cover the cost of various overhead expenses, including workers' compensation insurance.

Meldrum is the largest stamping processor in the state of Minnesota and manufactures metal specialties by use of punch press machines. Meldrum first became a customer of Labor Pool in March 1974 and frequently utilized Labor Pool employees during the succeeding months. When Meldrum needed temporary help, it would call Labor Pool to request extra employees to work as machine operators for a particular day.

In September 1974, the plaintiff, 16-year-old Geradeen Danek, went to the Labor Pool office in St. Paul to obtain employment. She was told that Labor Pool would hire her, would assign her

work at various plants throughout the city, and would pay her $2 an hour regardless of where she was sent. She was told to report to the Labor Pool office before 7 a. m. for a job assignment on any day when she wanted employment.

The first few times plaintiff reported for work, Labor Pool sent her to three different companies. Plaintiff was advised each morning of the jobs which were available for that day and had the right to choose the place she wanted to go. When she did not want a particular assignment, plaintiff had the right to refuse it and did so on at least one occasion.

On the morning of September 26, 1974, plaintiff reported to the Labor Pool office at the usual time and was told of work available that day at Meldrum. According to plaintiff's affidavit, when she was informed a job as a punch press operator was available at Meldrum she "decided to accept this plant." Later that same day while operating a punch press machine, plaintiff sustained injury to three fingers of her left hand.

Following the accident, plaintiff filed for and received workers' compensation benefits from Labor Pool's insurer. Subsequently, she brought this action against Meldrum as a third-party tortfeasor on the ground that her injury was the result of Meldrum's negligence. The trial court ordered summary judgment in favor of Meldrum, finding that plaintiff was an employee of both employers at the time of the accident and that her suit was barred by the exclusive remedy provided by the workers' compensation law.[1]

Plaintiff raises three issues on appeal: (1) Whether the trial court properly found, as a matter of law, that Meldrum was plaintiff's employer and thus protected from liability as a third-party tortfeasor; (2) whether Meldrum had waived its right to claim plaintiff as an employee; and (3) whether an illegally em-

---

[1] Minn. St. § 176.031 provides in pertinent part: "The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death."

ployed minor may bring a common-law tort action against an employer.

■ The first issue raised by plaintiff is whether the trial court properly determined as a matter of law that she was employed by both Labor Pool and Meldrum on the day of her injury, limiting her to the exclusive remedy provided pursuant to the workers' compensation law. The question to be determined is whether plaintiff and her injury were within the workers' compensation law since it has been uniformly held that the statutory compensation would then be the sole remedy and that any recovery at common law is barred. Prosser, Torts (4 ed.) § 80, p. 531.

We consider here for the first time the "loaned-servant doctrine" with respect to that subclass of general employers known as labor brokers, who supply temporary workers to special employers. The loaned-servant doctrine provides that if an employer loans an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the party to whom his services have been loaned. Restatement, Agency 2d § 227.

This common-law principle applies to cases arising under the workers' compensation act and allows an employee to be simultaneously in the general employment of one employer and in the special employment of another. Thus, the loaned employee not only remains the employee of the person who loaned him but also may be the employee of the person to whom he is loaned. 3 Schneider, Workmen's Compensation Text (Perm. ed.) § 779. In such cases, the employee may look to one or to the other or to both employers for compensation since he is at the same time under a general and a special employment relationship. Ibid. § 783.

Whether the employee should be regarded as a loaned employee in the service of the special employer or whether he should be regarded as remaining solely in the service of his general employer depends upon several factors when considered within the context of workers' compensation cases. Three conditions must be satis-

fied before the loaned-servant doctrine may be applied to a special employer to whom an employee has been sent by a general employer. The rule is set forth in 1A Larson, Workmen's Compensation Law, § 48.00, as follows:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) the employee has made a contract of hire, express or implied, with the special employer;

"(b) the work being done is essentially that of the special employer; and

"(c) the special employer has the right to control the details of the work.

"*When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.*" (Emphasis supplied.)

Although plaintiff argues that she was solely in the employ of Labor Pool, it is evident that Labor Pool's only function as a labor broker was to furnish personnel to fill the temporary labor needs of other employers. The fact that Labor Pool hired and had the right to fire plaintiff, compensated her directly, and paid the expenses of her social security taxes and workers' compensation insurance did not give Labor Pool the right to control the details of the performance of her work. The work plaintiff performed was solely Meldrum's and only Meldrum had the right to control the particular act giving rise to her injury. See, Nepstad v. Lambert, 235 Minn. 1, 50 N. W. 2d 614 (1951).

Therefore, we have no doubt that conditions (b) and (c) are satisfied in the instant case since the work performed by plaintiff was that of Meldrum, and since Meldrum had the right to control the details of the work. However, as to condition (a) we must determine whether plaintiff had consented to the special employment relationship as evidenced by the existence of a contract of hire, express or implied, with Meldrum. Consent is of primary importance since the application of the loaned-servant

doctrine in workers' compensation cases causes an employee to relinquish the right to sue his special employer at common law for negligence. 1A Larson, Workmen's Compensation Law, § 48.10, p. 8-206.[2]

We have held that a new relationship cannot be thrust upon an employee without his knowledge or consent. Moreover, the employee must understand that he is submitting himself to the control of a new master. Petschow v. Scheid, 259 Minn. 474, 108 N. W. 2d 1 (1961). Although an employee's consent may be implied from his acceptance of the special employer's control and direction, what seems on the surface to be such acceptance may be no more than continued obedience to the general employer's commands. 1A Larson § 48.10, p. 8-214. See, Darvell v. Paul A. Laurence Co. 239 Minn. 55, 57 N. W. 2d 831 (1953).

We recently held in Rademaker v. Archer Daniels Midland Co. 310 Minn. 240, 247 N. W. 2d 28 (1976), that when a defendant raises the loaned-servant doctrine as an affirmative defense to a plaintiff's tort claim, the burden rests with the defendant to prove that there was consent to the alleged special employment relationship. We stated that the control test alone was not determinative and emphasized our adherence to the rule that where an employee's rights are to be affected by his characterization as a loaned employee, especially in the context of workers' compensation cases, the employee's consent to the special employment relationship is essential. However, we specifically reserved any opinion with respect to the question of labor brokers as general employers, stating that it might be appropriate in those circumstances "to infer the employee's consent to a special employment relationship as a matter of law * * *." (310 Minn. 247, 247 N. W. 2d 32).

The trial court in the instant case relied almost exclusively on

---

[2] Workers' compensation cases differ from those where an injured third party seeks to impose vicarious liability on the special employer of a loaned employee who caused his injury since the loaned employee himself loses no personal rights under those circumstances.

the landmark case of St. Claire v. Minnesota Harbor Service, Inc. 211 F. Supp. 521 (D. Minn. 1962), in which the facts are similar. In St. Claire, the general employer was Manpower, Inc., whose sole function was to furnish personnel to fill the temporary labor needs of its customers. Plaintiff, a manual laborer, was injured while cleaning the defendant's barge and sued the defendant as a third-party tortfeasor. The federal district court, in awarding summary judgment to the defendant, said:

"It is therefore the opinion of this Court that where the primary employer (Manpower here) does no more than provide personnel for the use of the ultimate employer (the defendant here), where the fees received by the primary employer from the ultimate employer include provision for Workman's Compensation coverage for the employees supplied, where this Workman's Compensation was in force at the time of the accident, and where the injury occurred (1) while the employee was under the control of the ultimate employer (the defendant here) and (2) while the employee was engaged in a task which all the parties (the plaintiff, the defendant and Manpower) must be deemed to have contemplated that the employee would perform (i.e., while the plaintiff was within the scope of his employment), then the injured employee cannot sue the ultimate employer as a third-party tort-feasor." 211 F. Supp. 528.

It has been uniformly established in other jurisdictions which have considered the elements of control and consent in labor-broker cases that the temporary worker does become the employee of the labor broker's customer. These cases have implied both the necessary elements of control and consent, making summary judgment proper. 1A Larson, Workmen's Compensation Law, § 48.23, p. 8-238.

In Beaver v. Jacuzzi Brothers, Inc. 454 F. 2d 284 (8 Cir. 1972), the Circuit Court of Appeals barred a similar tort action when an employee fell on the special employer's premises where she had been sent on temporary assignment by Kelly Girl, Inc. The

court noted that "[a]s a matter of common experience and of present business practices in our economy, it is clear that an employee may be employed by more than one employer even while doing the same work." 454 F. 2d 285.

Renfroe v. Higgins Rack Coating & Mfg. Co. Inc. 17 Mich. App. 259, 169 N. W. 2d 326 (1969), held that whether a customer utilizing the services of an employee furnished by a labor broker was an "employer" within the workers' compensation law was not a question of fact for a jury to decide but was appropriate for summary judgment and reasoned:

"In analyzing the triangular relationship in question here, we may ask, what was the economic reality for each of the three parties? By going to the ETS dispatch room, Roy Renfroe agreed to work for ETS, and since the only work to be done was that of ETS's customers, Renfroe must necessarily have agreed to work for the customers of ETS as well (in this case, Higgins Co.). Renfroe did in fact submit to the direction of the ETS dispatcher in the dispatch room and of Higgins' foreman in the factory.

\* \* \* \* \*

"*The economic reality of this case is that both ETS and Higgins Co. were employers of Roy Renfroe, each in a different way.* It is not necessary to make fine semantic distinctions as to types of degrees of control, etc. *It is enough to say that either could be liable under the workmen's compensation act, therefore, both are protected by it.*" (Emphasis supplied.) 17 Mich. App. 266, 169 N. W. 2d 329.

In Wright v. Habco, Inc. 419 S. W. 2d 34 (Mo. 1967), a plaintiff hired by Manpower, Inc., was sent to work for the defendant and was injured on the job. The trial court concluded as a matter of law that the plaintiff was defendant's special employee and entered summary judgment. On appeal, in addition to finding the requisite element of control because the plaintiff's work was performed under the exclusive direction of the defendant's foreman, the court explained:

"* * * we think it is quite clear that plaintiff consented to work for defendant and that such was pursuant to an implied contract between them. In this case plaintiff knew when he was hired by Manpower that all of his work would actually be performed for various customers of his general employer. The very fact that he entered into an employment arrangement of that nature would constitute a general consent to work for special employers such as defendant." 419 S. W. 2d 36.

See, also, Hamilton v. Shell Oil Co. 233 So. 2d 179 (Fla. App. 1970); Blessing v. T. Shriver and Co. 94 N. J. Super. 426, 228 A. 2d 711 (1967); Daniels v. MacGregor Co. 2 Ohio St. 2d 89, 206 N. E. 2d 554 (1965); Chickachop v. Manpower, Inc. 84 N. J. Super. 129, 201 A. 2d 90 (1964).

Because we agree with the reasoning of these cases, we hold that plaintiff should be deemed to have consented to perform services for Meldrum; that all of the necessary elements of the loaned-servant doctrine are present; that plaintiff was therefore an employee of Meldrum as well as Labor Pool; and that summary judgment in favor of Meldrum was appropriate.

■ The second issue raised by plaintiff is based on her argument that Meldrum has waived its right to claim plaintiff as an employee because of its acceptance of the terms and conditions of Labor Pool's work order. The work order provided that "CUSTOMER acknowledges and agrees that the persons assigned by LABOR POOL are the employees of LABOR POOL, and not the employees of CUSTOMER * * *."

The terms of the work order did not change the legal relationship of the parties since the nature of that relationship must be ascertained not from the label given to it by the parties themselves but from the consequences which the law attached to their arrangements and to their conduct. Edelston v. Builders and Remodelers, Inc. 304 Minn. 550, 229 N. W. 2d 24 (1975); Elwell v. Fake, 264 Minn. 329, 119 N. W. 2d 19 (1962). Therefore, de-

fendant did not waive the right to claim plaintiff as its employee by the terms of any agreement.[3]

■ Finally, defendant argues that an illegally employed minor should have the right to bring a common-law tort action against an employer, despite the provisions of the workers' compensation law.[4] The Minnesota Workers' Compensation Act was amended by L. 1945, c. 233, § 2, to include all minors without distinction as to the legality or illegality of their employment. Minn. St. 176.011, subd. 9(2).[5] Since the act now applies to all minors, the remedies of the act are exclusive and common-law actions against

[3] Plaintiff also maintains that Meldrum's response to a letter from plaintiff's counsel which stated that plaintiff "was an employee of Labor Pool" at the time of the accident should be deemed conclusive to establish the legal relationship of the parties. Again, this involves a determination of law and Meldrum is not bound by its own erroneous conclusion.

[4] Plaintiff alleges a violation of the Fair Labor Standards Act but this issue may not be raised for the first time on appeal. It was not considered by the court below and thus is not subject to review by this court. Komatz Construction, Inc. v. Western Union Tel. Co. 290 Minn. 129, 186 N. W. 2d 691 (1971). Plaintiff also argues that Meldrum violated the Minnesota Child Labor Standards Act. However, at the time of plaintiff's injury, no regulations had been adopted pursuant to Minn. St. 181A.04, subd. 5, which would prohibit a minor under 18 years of age from being employed to operate a punch press machine. In any event, even had the statute been in effect, the only penalty provided for its violation is conviction of a misdemeanor. Minn. St. 181A.12, subd. 2.

[5] Minn. St. 176.011, subd. 9, provides in part: " 'Employee' means any person who performs services for another for hire; and includes the following:

\* \* \* \* \*

"(2) a minor."

Minn. St. 176.091 further provides: "A minor employee has the same power to enter into a contract, make election of remedy, make any settlement, and receive compensation as an adult employee, subject to the power of the commissioner of the department of labor and industry, compensation judge, or worker's compensation court of appeals to require the appointment of a guardian for the minor employee to make such settlement and to receive moneys thereunder or under an award."

an employer are barred. We conclude that plaintiff's claim is without merit.

Affirmed.