**Harvey MILLER, Appellant,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Respondent.**

**No. 47408.**

Supreme Court of Minnesota.

March 10, 1978.

Hansen, Dordell & Bradt and William M. Bradt, St. Paul, for appellant.

Jardine, Logan & O'Brien and Charles E. Gillin, St. Paul, for respondent.

Heard before KELLY, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Harvey Miller, appellant, while operating a dump truck in the course of his employment with the village of Hokah, Minnesota,

backed into and injured Edward Von Arx. The truck was owned by Joseph Miller and loaned to the village. Von Arx was employed by S.E.M.C.A.C., under a Federally-funded program, and his services were provided at no cost to the village. Benefits based on Von Arx' temporary disability were paid to him by S.E.M.C.A.C.'s worker's compensation carrier, which in turn brought an action for subrogation against Joseph Miller and Harvey Miller. The company insuring the dump truck, respondent Federated Mutual Insurance Company, declined to defend Harvey Miller in the subrogation action, and the latter brought this action for a declaratory judgment. The trial court ruled in favor of the insurer, resting its decision on the "cross-employee exclusion" contained in the insurance policy covering the dump truck. We reverse.

The essential facts in this case are not in dispute. Edward Von Arx, a 16-year-old high school student, qualified for temporary summer employment under a Federal job program administered in his locale by S.E.M.C.A.C., a nonprofit corporation which places a number of youths in part-time positions with a variety of nonprofit agencies. The program participants are paid directly by S.E.M.C.A.C. and are covered by its worker's compensation insurance. The agency to which each youth is assigned, however, provides the day-to-day supervision of his or her work. S.E.M.C.A.C. placed Von Arx with the village of Hokah, Minnesota, as a maintenance worker. Harvey Miller was the only maintenance worker employed by the village and he became responsible for the immediate supervision of Von Arx' labors. The village provided Von Arx with whatever tools were necessary in the performance of his assigned tasks and also kept a record of his working hours.

The incident giving rise to this litigation occurred on June 28, 1974, while Harvey Miller and Von Arx were working together on a minor street repair project. In the course of operating a dump truck, Harvey Miller backed the truck into Von Arx, pinning the latter against a guardrail and injuring him. At the time of the accident, the dump truck was on loan to the village of Hokah from its owner, Joseph Miller.

As a result of the injuries he sustained, Von Arx was paid temporary disability benefits by S.E.M.C.A.C.'s worker's compensation insurer, Liberty Mutual Insurance Company. Liberty in turn became subrogated to Von Arx' rights and brought a negligence action against Joseph Miller as owner and Harvey Miller as the driver of the dump truck. The liability policy on the truck was carried by the Federated Mutual Insurance Company. Federated agreed to defend Joseph Miller as its named insured but declined to defend Harvey Miller on the ground that he was not a person insured within the terms of the policy. Harvey Miller instituted this action for a declaration of his rights under the Federated policy.

The insurance policy in question complied with the requirements of the statute in effect at the time of the accident, Minn.St. 1971, § 170.40, subd. 2(2), and afforded coverage to permissive users of the insured vehicle. Although Harvey Miller was undisputedly a permissive user of the truck in this case, Federated's refusal to defend him rests on a provision of the policy which purports to exclude from coverage injuries to an employee caused by the actions of a coemployee. This standard form provision, known in the insurance industry as a "cross-employee exclusion," states:

"III. Definition of Insured: (a) * * * The insurance with respect to any person or organization other than the named insured or such spouse *does not apply*:

\*　　\*　　\*　　\*　　\*　　\*

"(2) to any employee with respect to injury to * * * *another employee of the same employer injured in the course of such employment* in an accident arising out of the maintenance or use of the automobile in the business of such employer." (Italics supplied.)

The issues presented for determination on this appeal are thus:

(1) Whether Von Arx was "employed" by the village of Hokah and was therefore a coemployee of Harvey Miller for the purposes of the cross-employee exclusion contained in the insurance policy; and if so,

(2) Whether the cross-employee exclusion is properly applicable on the facts of this case.

The trial court found that Von Arx was an employee of the village and that under the cross-employee exclusion there was no coverage available to Harvey Miller.

1. In order for the cross-employee exclusion to be operative, Harvey Miller and Von Arx must have worked for a common employer. Harvey Miller argues that since Von Arx was originally hired and directly paid by S.E.M.C.A.C., he must be deemed to be employed by S.E.M.C.A.C. rather than the village. The trial court found otherwise, and with that portion of its decision we are in accord.

As a threshold matter, we observe that the function of the cross-employee exclusion is to eliminate potentially overlapping coverage between automobile liability and worker's compensation insurance in a single accident. See, Annotation, 45 A.L.R.3d 288, § 3. The meaning of the term "employee" in automobile insurance contracts should thus be construed in a manner consistent with the definition given that term in the law of worker's compensation. *Mutual Creamery Ins. Co. v. Gaylord*, 290 Minn. 47, 50, 186 N.W.2d 176, 179 (1971).

■ The question of who actually employs, for compensation purposes, a worker injured on the job is an issue frequently litigated in worker's compensation actions. In particular, the triangular relationship between S.E.M.C.A.C., Von Arx, and the village of Hokah is closely analogous to labor broker cases which arise under worker's compensation statutes. "Labor broker" is the term used to describe a business which hires employees and in effect sells their services to other secondary employers who are in need of temporary assistance. The broker is paid directly by these special employers, and in turn pays each of its employees a fixed wage. Problems arise, however, when a broker's employee is injured while working for a special employer. For readily apparent reasons, it is somewhat difficult to ascertain who employs the worker—as between the general and special employer—for the purpose of establishing compensation liability.

■ To resolve this difficulty, the courts of many jurisdictions have adopted the so-called "loaned-servant doctrine," which provides that when certain criteria are established, both a general and a special employer will be deemed to employ an injured worker and be liable for worker's compensation benefits. Prior to our recent decision in *Danek v. Meldrum Mfg. & Engineering Co. Inc.*, Minn., 252 N.W.2d 255 (1977), this court did not have occasion to apply the loaned-servant rule. In that case, however, we adopted the doctrine for application to a St. Paul labor broker. The rule set forth in 1A Larson, Workmen's Compensation Law, § 48.00 was quoted as follows (252 N.W.2d 258):

" 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

" '(a) the employee has made a contract of hire, express or implied, with the special employer;

" '(b) the work being done is essentially that of the special employer; and

" '(c) the special employer has the right to control the details of the work.

" '*When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.* (Emphasis supplied.)' "

The *Danek* opinion makes it clear, then, that under proper conditions an employee can be said to have two employers. In the present case, S.E.M.C.A.C.'s position is strikingly similar to that of an ordinary labor broker. It hires and places employees in temporary positions and pays them directly for their services. S.E.M.C.A.C.'s only distinguishing feature is the source of its reimbursement. Were S.E.M.C.A.C. a

normal labor broker, it would be paid by the village of Hokah for the services of Von Arx. Instead, a Federal grant is the source of Von Arx' wages. We do not consider this distinction material, however, and believe that Von Arx' employment falls squarely within the requirements set forth in *Danek*. Von Arx (a) was employed under a contract of hire; (b) performed work for the village of Hokah only; and (c) was under the constant supervision of village employees.

Appellant recognizes the logical force of the *Danek* opinion but argues that the contract of hire requirement of the loaned-servant doctrine is not met in this case. He reasons that because the village of Hokah made no payment for Von Arx' labors, there could not have been a contract of hire within the meaning of part (a) of the loaned-servant rule. Examining the rationale of the contract of hire language, however, we are persuaded that this contention is not well founded.

 In the law of worker's compensation, a "contract of hire" is a requisite element of any employment relationship—be it "loaned servant" or otherwise—for two reasons. First, the existence of a contract indicates that labor is being performed in exchange for something of value rather than gratuitously. The payment of value by an employer is critical because the entire worker's compensation scheme is predicated on the desire to còmpensate an injured employee for what has been lost. Benefits are thus keyed to the worker's earnings, and if there are no earnings, it is impossible to determine with any accuracy the extent of the loss and the size of the appropriate award. See, 1A Larson, Workmen's Compensation Law, § 47.10. Second, and more important, the existence of a contract of hire is an important indicium of an employee's *consent* to an employment relationship.

Consent is considered crucial because with the establishment of an employment relationship, an employee experiences a significant surrender of certain common-law rights and the substitution of the right to an exclusive worker's compensation remedy. Courts have been justifiably reluctant to force this exchange of rights upon employees who might not have realized that their status had been affected. As a consequence, courts have looked for express and implied consent to employment status; and the contract of hire test provides a shorthand means of stating and satisfying this consent requirement. See, 1A Larson, Workmen's Compensation Law, § 47.10; *Danek v. Meldrum Mfg. & Engineering Co., Inc., supra.*

ᐧ It is clear, then, that the "contract of hire" language in the *Danek* opinion does not state a requirement which need be applied literally. Rather, the existence of an express or implied contract in any employment relationship tends as a practical matter to obviate the two more fundamental concerns discussed above. In this case, we are convinced that these concerns were fully addressed in spite of the fact that the village of Hokah paid no one for Von Arx' services. Von Arx received a specific wage, making his injury-related compensation benefits easily calculable; and the facts of this case fully justify the inference of Von Arx' consent to an employment-like relationship with the village.[1] We hold that Von Arx must be deemed an employee of both the village and S.E.M.C.A.C.

In an effort to avoid this conclusion, appellant cites cases holding that volunteer workers are not "employees" within the purview of worker's compensation statutes. The rule that volunteers are not employees is well established.[2] See, 1A Larson, Workmen's Compensation Law, § 47.41(a) and (c). Volunteer cases are inapposite here, how-

---

1. Indeed, in "loaned-servant" situations, consent to an employment relationship with the "special employer" (here the village of Hokah) may be implied from the employee's acceptance of the special employer's control and direction. See, 1A.Larson, Workmen's Compensation Law, § 48.10, p. 8–214.

2. We note that the legislature has provided limited statutory exceptions to this rule at Minn.St. 176.011, subd. 9(7)(8)(9)(10) and (12).

ever, because Von Arx was in no sense a volunteer. He worked for a wage, albeit paid by S.E.M.C.A.C., and there is no indication that he would have worked gratuitously for the city had S.E.M.C.A.C. ceased to pay him. The fact that the city was not the entity paying the wage cannot change Von Arx from a wage earner to a volunteer.

Nor do we find compelling appellant's suggestion that our decisions in *Otten v. University Hospitals*, 229 Minn. 488, 40 N.W.2d 81 (1949), and *Krause v. Trustees of Hamline University*, 243 Minn. 416, 68 N.W.2d 124 (1955), should control this appeal. Both of those cases involved student nurses who sustained compensable injuries while receiving clinical training in hospitals as part of their course of instruction. We held that the respective educational institutions were the nurses' exclusive employers for worker's compensation purposes. In each case, however, we noted that the educational institution maintained extensive control over the student nurses' training regimen in the hospitals, and both decisions were expressly predicated on that factor. The present case is readily distinguishable since S.E.M.C.A.C. relinquished virtually all control over the performance of Von Arx' assigned tasks to the village of Hokah.

Therefore, as regards the construction of the insurance policy here at issue, we conclude that Harvey Miller and Edward Von Arx were coemployees.

■ 2. The more troublesome issue in this case concerns the effect to be given the cross-employee exclusionary language contained in the Federated policy. The clause in question excludes from coverage those injuries inflicted on one employee "by another employee of the same employer." Harvey Miller argues that the phrase "same employer" contemplates application to the named insured only. If he is correct, the exclusion would be inoperative here because

he and Von Arx were not employed by Joseph Miller, the named insured. Federated naturally contends that the term "same employer" is to be broadly construed and could refer to any employer, so long as the injured and injuring employees both work for him. We recognize, of course, that the handful of courts which have considered the issue have reached divergent results.[3] However, the cases from other jurisdictions (and the position of Federated on this appeal) omit consideration of a critical factor. Minn.St.1971, § 170.40 provides in relevant part:

"Subd. 2. Such owner's policy of liability insurance:

\*　　\*　　\*　　\*　　\*　　\*

"(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle \* \* \*.

\*　　\*　　\*　　\*　　\*　　\*

"Subd. 5. Such motor vehicle liability policy need not insure any liability under any workmen's compensation law nor any liability on account of bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured."

We think the broad language adopted by the legislature in § 170.40, subd. 2, manifests a strong concern for the protection of those persons who operate vehicles insured by others.[4] In light of this legislative poli-

---

3. See, *Bevans v. Liberty Mutual Ins. Co.*, 356 F.2d 577 (4 Cir. 1966); *Travelers Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 175 F.Supp. 673 (E.D.La.1959), affirmed, 274 F.2d 208 (5 Cir. 1960); *Welch v. Nat. Surety Corp.*, 206 So.2d 545 (La.App.1968); *Henderson v. .Int'l. Service Ins. Co.*, 65 Wash.2d 300, 396 P.2d 877 (1964).

4. Minn.St.1971, § 170.40, was repealed in connection with the enactment of Minnesota's no-fault legislation. We therefore express no opinion on present legislative policy concerning permissive users of insured vehicles.

cy determination, the exceptions to permissive user coverage contained in subd. 5 of the same statute must be strictly construed. See, 13 Appleman, Insurance Law and Practice, § 7406. For this reason, we interpret the worker's compensation liability and other employee liability to which subd. 5 refers as the liability of the named insured only. As we read the statute, an automobile liability policy generally need not cover injuries to the employees of the *named insured*, whether or not overlapping coverage with worker's compensation insurance would result. Beyond that point, however, the exception should not go.

Thus, whether or not the language of the Federated cross-employee exclusion can fairly be read as broadly as Federated contends, to do so would contravene legislative policy, rendering the exclusion ineffectual. Since the employees involved in this case were not those of the named insured, we conclude that the cross-employee exclusion relied upon by Federated was inoperative.

The result we reach is bolstered by our perception of the mechanics of this litigation. Von Arx has been fully compensated for his injuries by S.E.M.C.A.C.'s compensation carrier. Joseph Miller as the owner of the subject vehicle is rendered vicariously liable for Harvey Miller's negligence by operation of Minn.St. 170.54. Federated, as Joseph Miller's insurer, faces the prospect of paying the subrogation claim made by S.E.M.C.A.C.'s insurer. By denying Harvey Miller's coverage under its policy, Federated in effect reserves an action for contribution against him. We think this is precisely the result which the legislature sought to avoid, and accordingly we reverse the trial court's judgment on the cross-employee exclusion and remand for further proceedings consistent with this opinion.

Reversed and remanded.

OTIS, J., took no part in the consideration or decision of this case.