**Brian SMIEJA, Appellant,**

v.

**CITY OF BROWERVILLE, et al., Respondents.**

No. C2-86-1812.

Court of Appeals of Minnesota.

May 26, 1987.

Peter H. Watson, Spicer, Watson & Carp, Minneapolis, for appellant.

Michael J. Ford, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for respondents City of Browerville and Don Frie.

Frank J. Rajkowski, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for respondent Browerville Independent School Dist. No. 787.

Considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

The administrator of a federally funded temporary summer employment program, Rural Minnesota C.E.P., Inc., hired appellant Brian Smieja and placed him with respondent City of Browerville Independent School District No. 787. Smieja was injured while working with the School District and eventually received a workers' compensation award pursuant to C.E.P.'s insurance. Summary judgment was granted on Smieja's suit against the School District because Smieja was an employee of the School District at the time of his injury and thus his exclusive remedy was workers' compensation. The parties elected to

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

proceed on stipulated facts pursuant to Minn.R.Civ.App.Proc. 110.03. We affirm.

## FACTS

On August 9, 1982 appellant Brian Smieja was crushed by a baseball dugout that shifted while he was moving it. At the time of the accident Smieja was a 19 year old college student who had qualified for temporary summer employment under a federal job program administered by Rural Minnesota C.E.P., Inc. C.E.P. had hired Smieja and paid his salary throughout his participation in the program. Smieja was also covered by C.E.P.'s workers' compensation insurance.

After being hired by C.E.P. Smieja was placed with the City of Browerville's recreation department. The recreation department supervised Smieja's work with them. Prior to his injury, Smieja was voluntarily transferred to respondent City of Browerville School District No. 787. Again, this agency supervised Smieja's work despite the fact that Smieja was hired and paid by C.E.P. At the time of his accident Smieja was under the supervision of the School District.

Following Smieja's injury, Smieja successfully pursued a workers' compensation claim against C.E.P. A stipulation for settlement and order approving it were signed. Smieja then proceeded against respondents, City of Browerville, City of Browerville School District No. 787, and their agents in tort for his injury.

Respondent School District moved for summary judgment against Smieja. The trial court granted the motion, finding Smieja's exclusive remedy was under Minnesota's workers' compensation law. Under the "loaned servant" doctrine, as applied in *Danek v. Meldrum Manufacturing & Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977) and *Miller v. Federated Mutual Insurance Co.*, 264 N.W.2d 631 (Minn.1978), Smieja was found to be an employee of respondent School District at the time of the accident. Consequently, Smieja was barred from a suit in tort by Minn.Stat. § 176.031 (1986).

## ISSUE

Did the trial court correctly find appellant to be an employee of respondent, pursuant to the "loaned-servant" doctrine, for purposes of the Minnesota workers' compensation statute?

## ANALYSIS

Minn.Stat. § 176.031 (1986) provides workers' compensation as the exclusive remedy for employees against employers in cases of injury or death. The trial court found that appellant Brian Smieja was an employee of respondent City of Browerville Independent School District No. 787 at the time of his injury. Consequently, Smieja's tort action against the School District was barred by the Minnesota workers' compensation statute. Smieja's employment status was determined through application of the "loaned-servant" doctrine.

The "loaned-servant" doctrine provides:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

"(a) the employee has made a contract of hire, express or implied, with the special employer;

"(b) the work being done is essentially that of the special employer; and

"(c) the special employer has the right to control the details of the work.

*"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation."*

*Danek v. Meldrum Mfg. & Eng'g. Co.*, 312 Minn. 404, 408, 252 N.W.2d 255, 258 (1977) (emphasis in original).

There is little dispute over conditions (b) and (c). The record clearly establishes the work Smieja was doing was that of the School District and that they had the right to control the details of Smieja's work. The more difficult issue arises under condition (a).

Did Smieja make a contract of hire, express or implied, with the School District? Smieja must have understood and consented to an employment relationship with the

School District for this condition to have been met. *Danek*, 312 Minn. at 409, 252 N.W.2d at 259. Smieja's consent could be implied by acceptance of the special employer's control and direction, but this is not always determinative because "what seems on the surface to be such acceptance may be no more than continued obedience to the general employer's commands." *Id.*

In *Danek* the "loaned-servant" doctrine was applied to a "labor broker" situation. In a "labor broker" situation a business hires employees and in effect sells their services to a second employer in need of temporary help. Similar to the present case, in *Danek* the issue of consent was determinative. The *Danek* court noted "the control test alone was not determinative" and that "where an employee's rights are to be affected by his characterization as a loaned employee, especially in the context of workers' compensation cases, the employee's consent to the special employment relationship is essential." *Id.* (citing *Rademaker v. Archer Daniels Midland Co.*, 310 Minn. 240, 247 N.W.2d 28 (1976)). The *Danek* court ultimately found that in "labor broker" cases it was appropriate to imply consent to the second employment relationship, therefore summary judgment was appropriate. *Danek*, 312 Minn. 410–12, 252 N.W.2d at 259–60.

*Miller v. Federated Mutual Insurance Co.*, 264 N.W.2d 631 (Minn.1978) applied the "loaned-servant" doctrine enunciated in *Danek* to a non-"labor broker" situation. Again the determinative issue involved whether the employee had consented to the second employment relationship. *Id.* at 635. The *Miller* court found that the employee had consented and was an employee of the second employer as defined under the workers' compensation statute. *Id.* The trial court cited *Miller* as controlling because of its similar facts:

> Edward Von Arx, a 16–year-old high school student, qualified for temporary summer employment under a Federal job program administered in his locale by S.E.M.C.A.C., a nonprofit corporation which places a number of youths in part-time positions with a variety of nonprofit agencies. The program participants are paid directly by S.E.M.C.A.C. and are covered by its worker's compensation insurance. The agency to which each youth is assigned, however, provides the day-to-day supervision of his or her work. S.E.M.C.A.C. placed Von Arx with the village of Hokah, Minnesota, as a maintenance worker.

*Id.* at 633.

The employee in *Miller* was eventually injured and received workers' compensation from the federally funded program. At issue in *Miller* was whether or not the injured employee of the program was also an employee of the village of Hokah, Minnesota for purposes of a "cross-employee exclusion" in an applicable insurance policy. The pivotal issue under the applied "loaned-servant" doctrine was whether the employee had consented to the second employment relationship. The *Miller* court found the employee had consented to the second employment relationship and thus he was an employee of both the program and village.

The trial court in the present case found *Miller* to be determinative, stating "[e]ven if no express contract exists, the contract can be implied from the employee's acceptance of the special employer's control and direction." We agree.

The striking similarity of the facts of the present case and *Miller* mandate a finding that Smieja was the employee of the School District. If the slate was clean and *Miller* had not been decided, an issue of material fact may exist as to whether Smieja consented to a contract with the School District. While it is clear that Smieja was voluntarily working for the School District, there is no express consent to a second employment relationship. Yet, Smieja's acceptance of the School District's control and direction under conditions virtually identical to those present in *Miller* constitute implied consent to such a relationship as a matter of law.

The record indisputably establishes that Smieja was voluntarily working with the School District. The School District had complete control of Smieja's work. This

control, and Smieja's participation in a federally funded program that operated analogously to a "labor broker" situation, mandates the *Miller* result in this case. Smieja was an employee of the School District as a matter of law, thus his exclusive remedy was workers' compensation. No genuine issue of material fact remained.

## DECISION

Workers' compensation is appellant's exclusive remedy as appellant is an employee of respondent for purposes of the Minnesota workers' compensation statute.

Affirmed.